[Cite as *State v. Hall*, 2021-Ohio-1894.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28882 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-2136 |
| | : | |
| AARON L. HALL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of June, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Aaron L. Hall appeals from his convictions for the following offenses: Count I, aggravated robbery (deadly weapon), in violation of R.C. 2911.01(A)(1), a felony of the first degree; Count II, aggravated robbery (deadly weapon), in violation of R.C. 2911.01(A)(1), a felony of the first degree; Count III, aggravated robbery (deadly weapon), in violation of R.C. 2911.01(A)(1), a felony of the first degree; Count IV, kidnapping (felony or flight-safe release), in violation of R.C. 2905.01(A)(2), a felony of the second degree, and Count V, tampering with evidence (alter/destroy), in violation of R.C. 2921.12(A)(1), a felony of the third degree. Hall filed a timely notice of appeal on August 26, 2020.

{¶ 2} The incident which formed the basis for Hall's convictions occurred on June 28, 2019, when Hall committed a robbery of a bank in West Carrollton, Ohio. The robbery involved three employees of the bank, and Hall was found to have used a firearm while committing the offenses.

{¶ 3} On July 24, 2019, Hall was indicted for three counts of aggravated robbery (Counts I-III), each with a firearm specification; one count of kidnapping (Count IV); one count of tampering with evidence (Count V); and one count of having a weapon while under disability (Count VI). At his arraignment on July 30, 2019, Hall stood mute, and the trial court entered pleas of not guilty on his behalf. On August 7, 2019, Hall filed a motion to suppress, but he later withdrew the motion on October 25, 2019.

{¶ 4} In July 2020, Hall pled guilty to Counts I-V. In exchange for Hall's guilty pleas, the State dismissed Count VI and the firearm specifications attached to Counts I-III. In relation to his guilty plea to Count IV, kidnapping, Hall acknowledged that he was required to register as a violent offender. On August 21, 2020, the court sentenced Hall

pursuant to the Reagan Tokes Act ("RTA"); the trial court sentenced Hall to an indefinite mandatory minimum term of ten years (maximum of 15 years) on Counts I-III; an indefinite mandatory term of six years (maximum of 12 years) on Count IV[1]; and 36 months on Count V. The trial court ordered all of the sentences to be served concurrently for an aggregate sentence of a minimum of ten years to a maximum of 15 years in prison. The trial court also informed Hall of his duties to register as a violent offender and the requirements of that designation.

{¶ 5} It is from this judgment that Hall now appeals.

{¶ 6} Hall's first assignment of error is as follows:

THE TRIAL COURT FAILED TO FOLLOW THE MANDATES OF CRIM.R.

11, RENDERING HALL'S PLEA INVOLUNTARY AND UNKNOWING.

{¶ 7} In his first assignment, Hall contends that his pleas were not made in a knowing, intelligent, and voluntary manner because the trial court did not properly advise him of the maximum sentence he could serve. Specifically, Hall advances the following arguments: 1) the plea form for Count IV, kidnapping, did not contain the correct post-release control period; 2) the trial court improperly advised Hall that his mandatory minimum prison term could be reduced by earned credit for good behavior; and 3) the trial court failed to explain the duties associated with Hall's designation as a violent offender.

---

[1] We note that Hall's sentence for kidnapping -- a minimum of 6 years and a maximum of 12 years -- does not appear to comport with the Reagan Tokes Act, which sets maximum sentences at 50% above the minimum sentence. See R.C. 2929.144(B). However, because all of Hall's sentences were run concurrently and the kidnapping was not the highest-degree offense of which he was convicted, Hall's aggregate sentence is unaffected by the error.

{¶ 8} Crim.R. 11(C) sets forth the requisite notice to be given to a defendant at a plea hearing on a felony. To be fully informed of the effect of the plea, the court must determine that the defendant's plea was made with an "understanding of the nature of the charges and the maximum penalty involved." Crim.R. 11(C)(2)(a).

{¶ 9} In order for a plea to be made knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C). If a defendant's guilty plea is not voluntary and knowing, "it has been obtained in violation of due process and is therefore void." *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), fn. 5, quoting *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct 1166, 22 L.Ed.2d 418 (1969).

{¶ 10} A trial court must strictly comply with Crim.R. 11 as it pertains to the waiver of federal constitutional rights. These include the right to trial by jury, the right of confrontation, and the privilege against self-incrimination. *Id*. at 243. However, substantial compliance with Crim.R. 11(C) is sufficient when waiving non-constitutional rights. *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). The non-constitutional rights of which a defendant must be informed are the nature of the charges with an understanding of the law in relation to the facts, *the maximum penalty*, and that after entering a guilty plea or a no contest plea, the court may proceed to judgment and sentence. Crim.R. 11(C)(2)(a)(b); *State v. Morgan*, 2018-Ohio-319, 104 N.E.3d 941, ¶ 9 (2d Dist.), quoting *State v. Balidbid*, 2d Dist. Montgomery No. 24511, 2012-Ohio-1406; *see also McCarthy v. U.S.*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Substantial compliance means that under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving. *Nero* at 108.

{¶ 11} If there is a lack of substantial compliance regarding a non-constitutional right, then the reviewing court is to determine whether there was a partial or a total failure to comply with the rule. *State v. Cassell*, 2d Dist. Montgomery No. 27899, 2018-Ohio-1668, ¶ 14. A complete failure to advise of a non-constitutional right requires that the plea be vacated without an analysis of prejudice. *Id.*, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22, 25. "However, if the court's advisement on a non-constitutional right is considered partial compliance with the rule, then the plea cannot be vacated unless the defendant demonstrates prejudice." *Id.*, citing *Clark* at ¶ 32, 40. Prejudice in this context means that the plea would otherwise not have been entered. *Id.* at ¶ 15. Where the trial court completely fails to comply with Crim.R. 11(C)(2)(a) or (b), however, "an analysis of prejudice" is not implicated. *Sarkozy* at ¶ 22.

## Post-Release Control

{¶ 12} Under Crim.R. 11(C)(2)(a), a trial court's responsibility to determine that a defendant's plea is voluntary includes assuring that the defendant has an " 'understanding of the nature of the charges and of the maximum penalty involved * * *.' " *State v. Riddle*, 2017-Ohio-1199, 88 N.E.3d 475, ¶ 12 (2d Dist.), quoting *State v. Jones*, 2d Dist. Montgomery No. 24772, 2013-Ohio-119, ¶ 6. "The 'maximum penalty' includes any mandatory post-release control sanction[.]" *Jones* at ¶ 7. "Thus if the defendant will be subject to a period of post-release control, to comply with Crim.R. 11[,] the court must inform the defendant of post-release control." *Id.*

{¶ 13} In order to properly inform a defendant of post-release control, a trial court must both "notify [the] offender at the sentencing hearing about post-release control and

* * * incorporate post-release control into its sentencing entry." *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 11, quoting *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 22. Furthermore, "statutorily compliant notification" includes "notifying the defendant of the details of the post-release control and the consequences of violating post-release control," including whether post-release control is discretionary or mandatory and the term of supervision. *Id.*, citing *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 18, *Jordan* at ¶ 22-23, and *State v. Billiter*, 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960, ¶ 12.

{¶ 14} While the sentencing entry must incorporate the post-release control notifications given at the sentencing hearing, it "need not repeat those notifications verbatim." *Id.* at ¶ 13. Rather, "a minimally compliant entry must provide the [Adult Parole Authority] the information it needs to execute the post-release-control portion of the sentence." *Id.*

{¶ 15} Here, Hall argues that the plea form for kidnapping incorrectly stated that he was subject to a mandatory post-release control period of five years, when the correct term of post-release control was a mandatory period of *three* years. However, this issue was addressed at the plea hearing after the mistake was brought to the attention of the trial court in the following exchange:

TRIAL COURT: And, in fact, I need to tell you that – Counsel, I through III, the aggravated robbery and the kidnapping would all be mandatory sentences in this case. Do you understand that?

HALL: Yes, sir.

TRIAL COURT: And you understand the Court could not give you

community control sanctions and I will not consider that. Do you understand that?

HALL: I do.

TRIAL COURT: Also, sir, you understand that you will serve a period of post-release control of [sic] this case of five years on each of the aggravated robbery charges. You would serve a period, mandatory, *of three years on the kidnapping offense* and you may be required to serve a period of up to three years on the felony of the third degree.

UNIDENTIFIED SPEAKER #2: I think there's five years on –

HALL: I do, sir.

TRIAL COURT: F-2 should be a –

UNIDENTIFIED SPEAKER #2: Three years?

TRIAL COURT: Three years.

UNIDENTIFIED SPEAKER #2: Your Honor, I believe the plea form says that there's a mandatory PRC of five years on Count IV [kidnapping]. [Defense counsel], do you see the error? On the plea form for the kidnapping charge, it says there's PRC for five years.

TRIAL COURT: [Defense counsel], on the plea form there, if you could take a look at it. *The plea form is mistaken. It says that the kidnapping is for five years. The Court, to correctly state it, it's for three years. So if you could correct it on the plea form, I would appreciate it. And that would only be to the kidnapping charge.* If you could maybe have your client initial that, too, please. That – *I just don't want him to have any issues even*

*though I've told him correctly. I don't want him to have any issues on the plea form.*[2]

(Pause in the proceedings)

TRIAL COURT: Okay. Let me just repeat it here since we had to change it on the form. I told you correctly though that on the three counts of aggravated robbery, you will serve a period of five years of post-release control. *On the kidnapping, you would serve a period of three years of post-release control* and on the tampering with evidence, you could receive up to a period of three years on post-release control. Do you understand all that, Mr. Hall?

HALL: I do, sir

(Emphasis added.) Plea Hearing Transcript p. 8-9.

{¶ 16} While it is undisputed that the filed plea form incorrectly stated that Hall was subject to a mandatory post-release control period of five years for the kidnapping offense, it is apparent from the above exchange that the trial court imposed the correct three-year post-release control term on the record at the plea hearing. The trial court and the parties were all aware of the mistake in the kidnapping plea form. Additionally, the trial court ensured that Hall understood that there was a mistake on the plea form and confirmed that he understood that the correct term of post-release control for the kidnapping offense was three years. Hall was also informed of the correct term of post-

---

[2] Due to restrictions imposed because of the Covid-19 pandemic, Hall and defense counsel appeared before the trial court through a video call, with the trial court being visible to them on camera as well. Notably, the trial court's directive to defense counsel to correct the term of post-release control on the plea form and have his client initial it was not done.

release control in the judgment entry filed by the trial court. On this record, Hall cannot establish that he was prejudiced by the mistake on the plea form, nor can he establish that but for this mistake, he would not have pled guilty to the charged offenses. Because the record establishes that the trial court substantially complied with Crim.R. 11 when it informed Hall of the correct three-year post-release control term for his kidnapping offense, and the judgment entry reflects the correct term, this section of his first assignment of error is overruled.

### Reagan-Tokes Act Earned Credit

{¶ 17} Hall also argues that the trial court erred when it advised him that his term of imprisonment could be reduced by good behavior earned credit. Specifically, Hall argues that because his sentences were mandatory for the aggravated robbery and kidnapping charges, the trial court should not have advised him regarding the earned credit of 5-15% against his minimum sentence for good behavior. Because he was improperly advised of the opportunity for earned credit, Hall contends that his plea was involuntary.

{¶ 18} The Reagan Tokes Act was enacted in 2018 and became effective on March 22, 2019. R.C. 2901.011. Under the law, qualifying first- and second-degree felonies committed on or after March 22, 2019 are now subject to the imposition of indefinite sentences. The law specifies that these indefinite terms will consist of a minimum term selected by the sentencing judge from a range of terms set forth in R.C. 2929.14(A) and a maximum term determined by formulas set forth in R.C. 2929.144.

{¶ 19} Additionally, the law establishes a presumptive release date at the end of the minimum term. R.C. 2967.271(B). However, the Ohio Department of Rehabilitation

and Correction (ODRC) may rebut that presumption, resulting in the offender remaining in prison until the completion of the maximum term imposed by the sentencing judge. R.C. 2967.271(C).   In order to rebut the presumption, the ODRC must conduct a hearing and determine whether any of the following factors are applicable:

(1) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated [and] [t]he offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

R.C. 2967.271(C)(1-3).

{¶ 20} While the ODRC may exercise its discretion to keep an offender imprisoned, it also may exercise its discretion to conclude that the offender merits early release, as

long as the offender is not disqualified due to his security level. Under the RTA, the ODRC must draft administrative rules that credit inmates who demonstrate appropriate conduct with "earned reduction of minimum prison term" ("ERMPT"). ERMPT can reduce the minimum term between 5 and 15%. *State v. Dames*, 8th Dist. Cuyahoga No. 109090, 2020-Ohio-4991, ¶ 5. There is a rebuttable presumption that the offender gets the ERMPT credit once the ODRC requests it for the inmate. The trial court will hold a hearing at which the victim of the crime and the State of Ohio can present arguments that the offender should stay in prison. The trial court must then make findings to rebut the presumption; otherwise the ERMPT is considered earned.

{¶ 21} At Hall's plea hearing, the following exchange occurred:

TRIAL COURT: Do you understand, sir, it is possible for you to earn good time credit of anywhere from five to 15 percent against your minimum sentence for good behavior but, do you understand, the Court also has a right to deny your good time credit? Do you understand that?

HALL: Yes, sir.

TRIAL COURT: Okay. *And do you understand whether or not you receive good time credit, you will be released when you finish your minimum term unless the Department of Rehabilitation determines that you must remain in prison for bad conduct. Do you understand that?*

HALL: *I do.*

TRIAL COURT: In other words, those – *there is a presumption that you will be released after the minimum sentence the Court imposes. And if you're not released, it'll be up to the parole board to look at your record and if*

*you've had some bad conduct, it'll be their decision when you're released after that. It's not left up to the Court.* Do you understand that?

HALL: *I do, sir.*

TRIAL COURT: And once again, *do you understand that if you're not released by your minimum – when your minimum term ends, you will serve an additional period of time and be given a new release date by the prison system.* Do you understand that?

HALL: Yes, sir. I can keep my nose clean.

TRIAL COURT: That's good. If you do then there's no issues. Do you understand that this process will repeat if they do violate you until you finish your maximum term[?] *They can't keep you any longer than your maximum term but the resumption* [sic] *is that you'll be released after your minimum term depending upon your conduct.* Do you understand that?

HALL: I do.

Plea Hearing Transcript, p. 10-11.

{¶ 22} It is undisputed that a mandatory prison term renders a defendant ineligible for community control, judicial release, or earned credit. *See State v. Hendrix*, 12th Dist. Butler App. No. CA2012-12-265, 2013-Ohio-4978, ¶ 26. Here, although Hall was advised regarding good time credit, the trial court also clearly informed him that he would not be released until he completed his mandatory minimum sentence unless the ODRC decided to increase the sentence depending on his conduct while in prison. The trial court also advised Hall that the ODRC could not prolong his time in prison past the maximum term imposed by the trial court. Hall stated that he understood.

{¶ 23} Furthermore, in addition to pleading guilty to three counts of aggravated robbery and one count of kidnapping, all offenses requiring imposition of a mandatory sentence, Hall also pled guilty to one count of tampering with evidence, a felony of the third degree that did not require a mandatory sentence. Thus, technically, the trial court was required to advise Hall regarding good time credit pursuant to the RTA. R.C. 2967.271.

{¶ 24} As previously stated, the test for prejudice is "whether the plea would have otherwise been made." *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12. Therefore, Hall has the burden of proving that he relied upon the trial court's explanation of earned credit in deciding to enter his guilty pleas. The record establishes that the trial court properly advised Hall of the minimum and maximum mandatory prison terms that it could impose. The trial court also advised Hall that he was pleading guilty to one or more qualifying offenses that required indefinite sentencing pursuant to the RTA. The trial court informed Hall of all of the possible prison terms for each count, qualifying and non-qualifying offenses, and the minimum and maximum terms for each offense. When Hall inquired regarding the meaning of indefinite sentencing, the trial court clarified its earlier explanation, stating that he would receive both a minimum and a maximum sentence for the first- and second-degree felonies that he was pleading guilty to and that there was a presumption that he would be released upon completing the minimum mandatory sentence. In light of the foregoing, we conclude that Hall was not prejudiced when the trial court advised him that his term of imprisonment could be reduced by good behavior earned credit, and the advisement did not render his guilty pleas unknowing, unintelligent, and involuntary.

**Violent Offender Database**

{¶ 25} Further, Hall argues that the trial court erred when it failed to inform him at the plea hearing of his duties to enroll in the Violent Offender Database ("VOD") following his release from prison, because it affected the maximum penalty of his kidnapping offense, thus rendering his plea involuntary. Specifically, Hall argues that the trial court failed to properly notify him of the procedures to overcome the presumption of violent offender registration prior to sentencing.

{¶ 26} On March 20, 2019, R.C. 2903.41 et seq., commonly known as Sierah's Law, became effective. *See* 2018 Am.Sub.S.B. No. 231. Sierah's Law created the VOD and requires violent offenders convicted of specified offenses, including kidnapping, to enroll in the database. Sierah's Law creates a presumption that violent offenders enroll in the database and provides enrollment for a minimum of ten years. Re-enrollment in the database is required on an annual basis.

{¶ 27} R.C. 2903.42(A)(1), governing enrollment in the VOD, states as follows:

(1) For each person who is classified a violent offender, it is presumed that the violent offender shall be required to enroll in the violent offender database with respect to the offense that so classifies the person and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database. The presumption is a rebuttable presumption that the violent offender may rebut as provided in division (A)(4) of this section, after filing a motion in accordance with division (A)(2)(a) or (b) of this section, whichever is applicable. *Each violent offender shall be informed of the presumption established under this*

*division, of the offender's right to file a motion to rebut the presumption, of*

*the procedure and criteria for rebutting the presumption, and of the effect of*

*a rebuttal and the post-rebuttal hearing procedures and possible outcome,*

*as follows:*

(a) If the person is classified a violent offender under division (A)(1) of

section 2903.41 of the Revised Code, *the court that is sentencing the*

*offender for the offense that so classifies the person shall inform the*

*offender before sentencing of the presumption, the right, and the procedure,*

*criteria, and possible outcome.*

(Emphasis added.)

{¶ 28} As stated above, the presumption that a person classified as a violent offender must enroll in the violent offender database is rebuttable. R.C. 2903.42(A)(1). To rebut the presumption, Hall first was required to file a motion with the trial court, prior to or at sentencing, asserting that he was not the principal offender in the commission of the kidnapping and requesting that the court not require him to enroll in the VOD and not have all VOD duties with respect to that offense. R.C. 2903.42(A)(2)(a). Thus, Hall bore the burden to establish by a preponderance of the evidence that he was not the principal offender in the commission of the kidnapping. R.C. 2903.42(A)(4).

{¶ 29} If the violent offender proves that he or she was not the principal offender, the court must "continue the hearing for the purpose of determining whether the offender, notwithstanding the rebuttal of the presumption, should be required to enroll in the violent offender database and have all VOD duties with respect to that offense." R.C. 2903.42(A)(4)(a).

{¶ 30} At the plea hearing, the following exchange occurred:

TRIAL COURT: All right. I'm going to have you listen as the prosecution reads a statement of the charges. But before they do, is the State satisfied with the explanation so far?

THE STATE: Yes, Your Honor. However, *I would note that by virtue of pleading to Count IV, the kidnapping charge, Mr. Hall would have to register as a violent offender.*

TRIAL COURT: Yeah. I – I should've explain [sic] this to you, sir, and I'm sure [Defense Counsel] went over this with you. But by virtue of the statute because of the – is this for the kidnapping, too, or just the aggravated robbery?

THE STATE: Just kidnapping.

TRIAL COURT: Okay. On the kidnapping offense, the Court will have to designate you as a violent offender. You'll have the duty to register as that and I will explain all of that to you at the time of sentencing but you would be required to register as a violent offender. Do you understand that?

HALL: I do.

TRIAL COURT: Okay. Does that change anything so far up to this point in time?

HALL: No.

TRIAL COURT: Okay. Anything else that needs to be explained?

THE STATE: Yes, Your Honor. Your Honor, with regards to that violent offender requirement, *it's just a notification to the Defendant that if he does*

*need to challenge and rebut the presumption of it, then any kind of motion should have to be filed prior to sentencing..*

TRIAL COURT: Okay. [Defense Counsel], *you can explain to him if he wants to rebut that, at all, a motion has to be filed before sentencing on the violent offender, if that is happening.*

DEFENSE COUNSEL: *I understand that.*

TRIAL COURT: Anything further?

THE STATE: No, Your Honor.

TRIAL COURT: [Defense Counsel], are you satisfied with everything the Court's gone over so far?

DEFENSE COUNSEL: Yes.

(Emphasis added.) Plea Hearing Transcript, p. 13-15.

{¶ 31} In support of his argument that the trial court did not adequately advise him of his duties in regard to the violent offender specification, Hall relies on a recent opinion from the Ohio Supreme Court, *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286. In *Dangler*, the Supreme Court held that the trial court's failure to separately go over the sex offender registration and in-person verification requirements, community-notification provisions, and residence restrictions imposed by the sex offender registration scheme when accepting defendant's no contest plea did not constitute a complete failure to comply with the criminal procedure rule governing pleas of guilty and no contest in felony cases. *Id.* at syllabus. The *Dangler* court also found that sex offender duties were punitive in nature and part of the maximum penalty imposed, but because the duty to enroll in the registry is a non-constitutional aspect of the defendant's plea, the trial court

only had to substantially comply during the Crim.R. 11 colloquy, and therefore the defendant must establish that he was prejudiced. Hall's reliance on *Dangler* is misplaced.

{¶ 32} In the instant case, Hall was ordered to register with the VOD, which has been found to remedial in nature, rather than punitive. *See State v. Hubbard*, 146 N.E.3d 593, 2020-Ohio-856, ¶ 32 (12th Dist.). "[C]lassification as a violent offender and enrollment into the violent offender database "is a collateral consequence of the offender's criminal acts rather than a form of punishment per se." *Id.*, citing *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, at ¶ 34.

> "To argue the trial court has to inform defendant-appellant of all of the possible consequences of his plea is untenable. For example, the trial court does not have to inform defendant-appellant of all the 'effects' of his plea such as the potential for losing his/her job, home, marriage, reputation or that his/her plea to a felony will deprive him/her the right to vote and/or possess a firearm."

*State v. Craver*, 2d Dist. Montgomery No. 25804, 2014-Ohio-3635, ¶ 14, citing *State v. Rice*, 8th Dist. Cuyahoga No. 72685, 1999 WL 125742, *4 (Feb. 18, 1999).

{¶ 33} Since the VOD is a non-constitutional aspect of Hall's guilty plea for kidnapping and a collateral consequence of his actions, the trial court was not required to inform Hall of *all* of his duties in regard to registering as a violent offender. Nevertheless, on the record before us, we find that the trial court substantially complied with Crim.R. 11 in regard to informing Hall of his duty to register with the VOD. Specifically, Hall signed the plea form for the kidnapping charge which indicated that by pleading guilty to that

count, he would have to register as a violent offender. Additionally, the trial court advised Hall that he would have a duty to register with the VOD, and at the time of sentencing, it would review all of the duties with him with respect to registration. Significantly, the trial court and the State put Hall on notice at the plea hearing that if he wanted to rebut the presumption of having to register with the VOD, he would have to file a motion prior to sentencing. As stated above, the trial court advised defense counsel to discuss the VOD registration with Hall, and defense counsel stated that he understood. The record establishes that neither Hall nor his counsel filed a motion prior to sentencing in order to rebut the presumption of having to register as a violent offender. Finally, at sentencing, Hall was advised of all his duties to register as a violent offender, and he signed a Notice of Duties to Enroll as a Violent Offender (O.R.C. 2903.41 et seq.).

{¶ 34} Lastly, even if the trial court did not substantially comply with Crim.R. 11 when it failed to advise Hall of *all* of his duties pursuant to the VOD (which we do not concede), Hall cannot establish that he was prejudiced and would not have otherwise pleaded guilty. Significantly, the only manner by which Hall could have rebutted the presumption of having to register as a violent offender was to file a motion with the trial court arguing that he was *not* the principal offender. Hall was unable to advance this argument; the record clearly established that he was the sole perpetrator of the offenses, thereby making it nigh impossible for him to rebut the presumption that he was not the principal offender. Upon review, we therefore conclude that the trial court substantially complied with Crim.R. 11, and Hall's guilty pleas were made in a knowing, intelligent, and voluntary fashion.

{¶ 35} Hall's first assignment of error is overruled.

{¶ 36} Hall's second assignment of error is as follows:

THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S EXCESS SENTENCE.

{¶ 37} In his second assignment, Hall contends that the record does not support the sentence imposed by the trial court. Specifically, Hall argues that the trial court did not properly consider all of the relevant factors pursuant to R.C. 2929.11 and R.C. 2929.12 in regard to his remorse, his possible mental health problems, his acceptance of responsibility for his actions, and his ability to become a productive member of society. Therefore, he argues that his aggregate sentence was contrary to law.

{¶ 38} To the extent that Hall seeks to have this Court modify his sentence, we emphasize that the Supreme Court of Ohio recently clarified an appellate court's review of a felony sentence under R.C. 2953.08(G)(2). *State v. Jones,* Ohio Slip Opinion No. 2020-Ohio-6729, __ N.E.3d __, ¶ 39. The Supreme Court determined that R.C. 2953.08(G)(2)(a) "clearly does not provide a basis for an appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and R.C. 2929.12 because * * * R.C. 2929.11 and R.C. 292912 are not among the statutes listed in the provision." *Id.* at ¶ 31. Thus, the Supreme Court concluded that an appellate court may not modify or vacate a felony sentence based upon a finding by clear and convincing evidence that the record does not support the trial court's "findings" under R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶ 42 ("Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.").

{¶ 39} In *Jones,* the Supreme Court also confirmed that R.C. 2953.08(G)(2)(b) does not provide a mechanism for an appellate court to modify or vacate a felony sentence abased upon a finding that the sentence is "contrary to law" because it clearly and convincingly is not supported by the record under R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶ 32-39. "As a result of the Supreme Court's holding in *Jones,* when reviewing felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, we shall no longer analyze whether those sentences are unsupported by the record. We simply must determine whether those sentences are contrary to law." *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 18. "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." *Id.* citing *State v. Brown,* 2017-Ohio 8416, 99 N.E.3d 1135 (2d Dist.).

{¶ 40} The record demonstrates that the prison terms imposed by the trial court in this case were within the statutory range and that the trial court considered the requisite statutory factors in R.C. 2929.11 and R.C. 2929.12 when it fashioned Hall's aggregate sentence. Thus, Hall cannot demonstrate that his sentence was clearly and convincingly contrary to law, and his sentence must therefore be affirmed. *See State v. Burks,* 2d Dist. Clark No. 2019-CA70, 2021-Ohio-224, ¶ 9. Under *Jones,* this ends the inquiry regarding the individual and aggregate sentences.

{¶ 41} Hall's second assignment of error is overruled.

{¶ 42} Hall's third and final assignment of error is as follows:

HALL'S SENTENCE IS CONTRARY TO LAW BECAUSE HE WAS

SENTENCED PURSUANT [TO] THE REAGAN TOKES ACT, WHICH IS UNCONSTITUTIONAL.

{¶ 43} In his final assignment, Hall contends the newly-enacted statutory sentencing scheme established by the RTA is unconstitutional. Hall therefore asserts the sentence imposed by the trial court must be vacated. Hall also argues that his counsel's failure to object to the constitutionality of the RTA at sentencing constituted ineffective assistance.

{¶ 44} Initially, we note that Hall failed to object to the constitutionality of the RTA in the trial court. The "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus.

{¶ 45} We retain the discretion, of course, to consider a waived constitutional argument under a plain-error analysis. *In re M.D.*, 38 Ohio St.3d 149, 151, 527 N.E.2d 286 (1988). An error qualifies as "plain error" only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise. *State v. Macias*, 2d Dist. Darke No. 1562, 2003-Ohio-1565, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 245, 2002-Ohio-2126, 767 N.E.2d 216. Accordingly, we review Hall's argument using a plain error analysis.

{¶ 46} As with any statute enacted by the General Assembly, the RTA is entitled to a "strong presumption of constitutionality." *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7. Thus, "if at all possible, statutes must be construed in

conformity with the Ohio and the United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). A party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt. *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41, citing *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 12.

**{¶ 47}** Here, Hall argues that the RTA violates the separation of powers doctrine. Specifically, he argues the law is unconstitutional because it permits the ODRC, rather than a trial court, to make the factual determination whether a defendant's prison term will extend beyond the presumptive minimum term. Hall's argument is based upon the holding in *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000).

**{¶ 48}** In *Bray*, the Ohio Supreme Court addressed the constitutionality of R.C. 2967.11 (which has since been repealed). The statute stated, in pertinent part, that "[a]s part of a prisoner's sentence, the parole board may punish a violation committed by the prisoner by extending the prisoner's stated prison term for a period of fifteen, thirty, sixty, or ninety days in accordance with this section. If a prisoner's stated term is extended under this section, the time by which it is so extended shall be referred to as 'bad time.' " R.C. 2967.11(B). A "violation" was defined as "an act that is a criminal offense under the law of this state or the United States, whether or not a person is prosecuted for the commission of the offense." R.C. 2967.11(A). Other sections in R.C. 2967.11 articulated the procedures that were followed to determine whether a "violation" (a crime) had been committed. *Bray* at 135.

**{¶ 49}** The Supreme Court held, "[i]n short, R.C. 2967.11(C), (D), and (E) enable[d] the executive branch to prosecute an inmate for a crime, to determine whether a crime

[had] been committed, and to impose a sentence for that crime." *Id.* The court held the statute improperly permitted the executive branch to act "as judge, prosecutor, and jury * * * [and thereby] intrude[d] well beyond the defined role of the executive branch as set forth in our Constitution." *Id.* Thus, the Court found the statute unconstitutional because it violated the separation of powers doctrine. *Id.* at 136.

{¶ 50} Hall's reliance upon *Bray* is misplaced because there is a significant distinction between R.C. 2967.11 and the RTA. *State v. Leet*, 2d Dist. Montgomery No. 28670, 2020-Ohio-4592, ¶ 15. Specifically, R.C. 2967.11 authorized the parole board to sentence a defendant to an additional prison term beyond that which had been imposed by the trial court. In *Bray*, the defendant had served the entirety of the definite sentence imposed by the trial court, but the parole board then tacked an additional prison term onto the defendant's sentence. In contrast, under the RTA, the executive branch cannot keep a defendant in prison beyond the maximum sentence imposed by the trial court. Simply put, the RTA does not allow the ODRC to lengthen a defendant's sentence beyond the maximum sentence imposed by the trial court. We thus conclude that *Bray* does not compel the conclusion that the RTA violates the separation of powers doctrine. *Id.*

{¶ 51} Hall also argues that the RTA violates due process. Specifically, Hall contends that the RTA "leaves the parole board with unfettered discretion to decide even whether the most minor infractions will keep an offender in prison longer." We have recently stated the following regarding whether the RTA comports with due process:

"[T]he fundamental requisite of due process of law is the opportunity to be heard in a meaningful manner. The Reagan Tokes Law satisfies these requirements. The Law states that, in order to rebut the presumption of the

minimum term, the DRC must make a particular statutory determination 'at a hearing.' R.C. 2967.271(C) and (D).   The law does not give the [ODRC] unfettered discretion to require an offender to serve more than the minimum term.   And it affords an offender notice and an opportunity to be heard before more than the minimum may be required."

*State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, ¶ 25, quoting *Woods v. Telb,* 89 Ohio St.3d 504, 513, 733 N.E.2d 1103 (2000), citing *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

{¶ 52} Accordingly, we therefore adhere to the conclusion that the RTA does not facially violate the separation of powers doctrine or a defendant's right to procedural due process, and the trial court did not err, plainly or otherwise, when it sentenced Hall pursuant to the RTA.

{¶ 53} Lastly, Hall argues that his counsel's failure to object to the constitutionality of the RTA at sentencing constituted ineffective assistance.

{¶ 54} "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).   Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688.   To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have

been different. *Id.* "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31, citing *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

{¶ 55} A defendant is not deprived of the effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland* at 688. A reviewing court may not second-guess decisions of counsel which can be considered matters of strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 56} Because we have concluded that Hall's constitutional rights were not violated by the trial court's imposition of sentence pursuant to the RTA, Hall is therefore, unable to establish that he was prejudiced by his counsel's failure to challenge the constitutionality of the statute. Accordingly, Hall is unable to establish that he received ineffective assistance of counsel.

{¶ 57} Hall's third assignment of error is overruled.

{¶ 58} All of Hall's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


HALL, J. and WELBAUM, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Ben M. Swift
Hon. Dennis J. Adkins