[Cite as *State v. Celaya*, 2025-Ohio-5246.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | |
|---|---|
| STATE OF OHIO | : |
| | :   C.A. No. 2025-CA-4 |
|     Appellee | : |
| | :   Trial Court Case No. 2024 CR 012 |
| v. | : |
| | :   (Criminal Appeal from Common Pleas |
| PAUL M. CELAYA | :   Court) |
| | : |
|     Appellant | :   **FINAL JUDGMENT ENTRY &** |
| | :   **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on November 21, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

LEWIS, J., and HUFFMAN, J., concur.

BRADLEY D. ANDERSON, Attorney for Appellant
JANE A. NAPIER and KARA N. RICHTER, Attorneys for Appellee

TUCKER, J.

{¶ 1} Paul M. Celaya appeals from his convictions in the Champaign County Common Pleas Court of aggravated possession of drugs and failure to appear. For the following reasons, we affirm.

## I.        Factual and Procedural History

{¶ 2} In February 2024, Celaya was indicted on one count of aggravated possession of drugs. Following arraignment, he was released on his own recognizance. After Celaya failed to appear for the final pretrial conference in April of 2024, the trial court issued a capias. In May 2024, Celaya was indicted on one count of failure to appear in violation of R.C. 2937.29 and R.C. 2937.99(A). Celaya did not appear again in court until he was arrested in November 2024 following a traffic stop in Englewood.

{¶ 3}  This matter proceeded to a jury trial during which the State presented the testimony of Champaign County Deputy Sheriff Daniel Fischer. Fischer was on routine patrol on January 18, 2024, when at approximately 11:38 p.m., he observed a vehicle driving toward him with a non-working headlight. Fischer initiated a traffic stop of the vehicle and approached the driver, Celaya. While speaking with Celaya, Fischer noticed a "butane torch-style lighter laying on the passenger seat, and then under the radio was a compartment that had numerous Q-tips in the compartment." Fischer testified that butane lighters are "typically used for drug use because it burns hotter than a normal lighter," and drug users "will take

the cotton off the [Q-tip] and use that as a filter for the drugs that they're drawing into a syringe."

{¶ 4} During the encounter, Fischer learned that Celaya was on his way to pick up a female friend named Rusty Smith. Fischer testified that a BOLO alert had been issued for Rusty Smith, who was wanted by law enforcement in connection with a stolen car and "active warrants out of Champaign County."[1]

{¶ 5} Fischer asked Celaya to step out of his vehicle so that he could have his K-9 perform a free-air sniff of the car. According to Fischer, the K-9 alerted at the driver's door. Fischer then searched the car and saw a "glass owl that was filled with water tucked between the [driver's] seat and the console." The owl was not completely visible, and Fischer did not remove it from its location. Fischer believed the owl was a "marijuana bong." Fischer then spoke with Celaya about helping him locate Smith. Celaya indicated that he did not want to do so. Fischer released Celaya because he was not in possession of felony-level drugs.

{¶ 6} Approximately 40 minutes later, Fischer encountered Celaya at a local gas station. Fischer "thought . . . [Celaya] could have gone back to pick [Rusty] up." Fischer entered the gas station convenience store to look for Rusty, but she was not in the store. Fischer exited and approached the passenger door of Celaya's vehicle. Celaya rolled the window down. Fischer again saw the owl he had noticed earlier, now in plain view in the passenger seat. Fischer testified that he "instantly recognized it as a meth pipe" because he "could see the globe on the pipe . . . and it had a white and red residue consistent with methamphetamine." Fischer searched the vehicle again, collected the pipe, and released Celaya.

---

[1] BOLO is an acronym for "be on the lookout."

3

{¶ 7} The parties stipulated that the glass pipe contained methamphetamine residue. The State's evidence revealed that Celaya completed an "own recognizance bond form" stating that he was required to appear at all court hearings and that failure to do so would render the bond void. The State's evidence indicated that Celaya was in court when the judge set a date for the final pre-trial hearing and the trial. The State's evidence further indicated that Celaya had failed to appear for the final pre-trial hearing.

{¶ 8} Celaya testified that he was driving to pick up a female friend when he was pulled over by Fischer. Celaya testified Fischer asked him to help locate Rusty Smith, but he denied the request. Fischer had his K-9 conduct a sniff of the vehicle. Celaya maintained that the K-9 failed to alert, and at the time, he had pointed out the failure to Fischer. Celaya claimed that Fischer "did not like" his statement so he forced the dog back to the vehicle and pretended that the K-9 had alerted. Celaya testified that Fischer searched his vehicle, located the "weed bong," and stated that he "did not give a shit" about it. After Fischer released Celaya, he went to a gas station where he again encountered Fischer. Celaya testified that Fischer approached the passenger side of his vehicle and asked him if Rusty Smith was with him. Fischer then looked down at the bong and stated, "I did not realize that was a meth bong." Fischer took the bong and allowed Celaya to leave. As for Celaya's failure to appear for his final pretrial conference, Celaya said that he had not intended to miss his court date. Celaya testified that he had worked late the night before and accidentally slept through the hearing time.

{¶ 9} The jury found Celaya guilty of both charges. The trial court imposed an aggregate prison term of 28 months. Celaya appeals.

## II.     Ineffective Assistance of Counsel

{¶ 10} Celaya's assignment of error states:

APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL BECAUSE HE

WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 11} Celaya asserts his convictions should be reversed because his attorney provided ineffective assistance of counsel.

{¶ 12} We review alleged instances of ineffective assistance of counsel under the two-part analysis found in *Strickland v. Washington*, 466 U.S. 668 (1984), which the Ohio Supreme Court adopted in *State v. Bradley*, 42 Ohio St.3d 136 (1989). To prevail on an ineffective-assistance claim, a defendant must show trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus.

{¶ 13} Courts determine deficient performance by asking whether counsel's conduct "fell below an objective standard of reasonableness." *Strickland* at 688. When making this determination, counsel's conduct must be judged based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Only when counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" has counsel engaged in deficient performance. *Id.* at 687.

{¶ 14} To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This requires the errors to be so significant as to "undermine confidence in the outcome." *Id.* The failure to make a showing of either prong of the *Strickland* inquiry is fatal to a claim of ineffective assistance. *Id.* at 692.

{¶ 15} Celaya first claims trial counsel was ineffective because he failed to present a "coherent defense" to the charge of aggravated possession of drugs. In support, he contends counsel did not present evidence to dispute any of the elements of the offense and that counsel, instead, argued merely that it was unfair for Fischer to get a "do-over" or second "go-around" at seizing the pipe.

{¶ 16} Counsel's defense to the drug possession count was an attack on Fischer's credibility regarding the two encounters with Celaya and the seizure of the pipe during the second encounter. This attack was accomplished through counsel's cross-examination of Fischer and Celaya's direct testimony.

{¶ 17} Regardless of the effectiveness of this defense, we cannot agree, especially in light of the "hand counsel was dealt," that the defense was incoherent or that it was improper trial strategy. We do not conclude that counsel's performance was deficient.

{¶ 18} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *State v. Dunn*, 2024-Ohio-600, ¶ 19 (2d Dist.). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Hall*, 2021-Ohio-1894, ¶ 55 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524 (1992). This court will not second-guess decisions of counsel that may be considered matters of strategy. *Id*., citing *State v. Smith*, 17 Ohio St.3d 98 (1985).

{¶ 19} Celaya also contends counsel was ineffective for failing to file a motion to suppress evidence discovered during his two encounters with Fischer.

{¶ 20} "[F]ailure to file a motion to suppress is not per se ineffective assistance of counsel." *State v. Madrigal,* 87 Ohio St.3d 378, 389 (2000), citing *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Rather, to demonstrate ineffective assistance of counsel for failure

to file a motion to suppress, a defendant must "establish that a basis existed to suppress" the evidence in question. *State v. Adams*, 2004-Ohio-5845, ¶ 35. "'Thus, the failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made.'" *State v. Geralds*, 2025-Ohio-2209, ¶ 25 (1st Dist.), quoting *State v. Rosemond*, 2019-Ohio-5356, ¶ 34 (1st Dist.). "[E]ven when some evidence in the record supports a motion to suppress," an appellate court will presume that defense counsel was effective if "counsel could reasonably have decided that the motion to suppress would have been futile." *State v. Brown*, 2002-Ohio-5455, ¶ 11 (12th Dist.). *Accord State v. Edwards*, 1996 WL 388761, *2 (8th Dist.).

{¶ 21} With respect to the first encounter, the traffic stop, Celaya claims his attorney should have challenged whether the K-9 unit was properly certified and trained for drug detection. Celaya further asserts the record established a dispute as to whether the K-9 alerted during the open-air sniff of the vehicle. Specifically, Celaya testified the dog failed to "hit" on his car but Fischer "grabbed his dog by the collar and forced him on my car . . . acting like he hit. But the dog didn't hit." He argues that "challenging the dog's alert" in a motion to suppress "could have resulted in the suppression of the probable cause search of the vehicle and the deputy's observations during that search, including the discovery of the 'bong.'"

{¶ 22} With respect to the second encounter at the gas station, Celaya argues that Fischer had no probable cause for confiscating the pipe. In support, he claims the encounter was not consensual but rather was "effectively a stop."

{¶ 23} We begin with the second encounter and note that the Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *State v. Taylor*, 106 Ohio App.3d 741, 747 (2d Dist. 1995). This protection, however, is not implicated in every interaction an individual has with a police officer. *State*

7

*v. Schott*, 1997 WL 254141, *2 (2d Dist.). "The law recognizes three types of police-citizen interactions: 1) a consensual encounter, 2) a brief investigatory stop or detention, and 3) an arrest." *State v. Millerton*, 2015-Ohio-34, ¶ 20 (2d Dist.).

**{¶ 24}** A consensual encounter occurs when "the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *Taylor* at 747. Consensual encounters are not seizures, and the Fourth Amendment guarantees are not implicated in such an encounter. *Id.* at 747-748. "Whether a particular police encounter with a citizen is an investigative stop, as opposed to a consensual encounter, is fact-sensitive." *State v. Weisgarber*, 2017-Ohio-8764, ¶ 19 (2d Dist.). "[T]he focus is on the police officer's conduct, not the subjective state of mind of the person stopped." *Id.* at ¶ 18, citing *State v. Ramey*, 2016-Ohio-607, ¶ 25 (2d Dist.).

**{¶ 25}** This court has previously held that approaching and questioning people seated in a parked vehicle does not constitute a seizure so as to require an officer to have a reasonable suspicion of criminal activity. *State v. Williams*, 2010-Ohio-4277, ¶ 26 (2d Dist.), quoting *Schott* at *3.

**{¶ 26}** Here, Fischer was at the gas station and noticed Celaya's car sitting at the pumps. Fischer walked up to Celaya's passenger window, and Celaya rolled down the window. Fischer saw the entire owl plainly visible on the passenger seat and realized that it was a meth bong. According to Fischer, he told Celaya that he initially thought the owl was a marijuana bong and had not realized it was a meth pipe. He then collected the pipe. Celaya's testimony did not rebut or challenge this testimony except to add that Fischer again asked him about Rusty. Celaya indicated only he had felt "harassed" and "nervous."

8

{¶ 27} As conceded by Celaya, he was sitting in his vehicle in a public space when Fischer approached him. Celaya does not dispute that the meth pipe was in plain view and visible to Fischer without a search. There simply is nothing to support the claim that this constituted a stop. The mere fact that Celaya felt nervous or "harassed" was not a sufficient basis to find that a stop had occurred.

{¶ 28} On this record we find no basis upon which Celaya's counsel could have filed a motion to suppress. Celaya's counsel was not ineffective in declining to pursue suppression of the meth pipe that Fischer saw in plain view during his consensual encounter with Celaya.

{¶ 29} Based on our conclusion in relation to Fischer's second encounter with Celaya, even if counsel had performed deficiently by failing to file a motion to suppress regarding the first encounter, Celaya cannot demonstrate prejudice. Regardless of the propriety of the first search, Fischer's lawful recovery of the pipe during the second encounter provided the only evidence required to charge and convict Celaya of aggravated possession of drugs. Celaya has failed to demonstrate ineffective assistance of counsel related to either of his interactions with Fischer.

{¶ 30} Finally, Celaya claims counsel was deficient because he failed to present any defense to the charge of failure to appear.

{¶ 31} The transcript establishes that the State presented sufficient evidence to prove the offense. During the State's cross-examination of Celaya, he testified that he had missed the court appearance because he had overslept due to having been required to work late the night before. Celaya added that he had not intended to miss the hearing.

{¶ 32} The transcript demonstrates that Celaya's trial counsel informed the court that the decision not to question Celaya about the offense and the omission of any mention of

9

the offense from the defense's opening statement and closing argument were matters of trial strategy discussed with Celaya. Celaya addressed the court at the time defense counsel made this statement and did not raise any claim to the contrary.

{¶ 33} We are not privy to the reasoning behind this strategy, but it is quite possible that counsel simply had concluded that he could not present a good faith defense to the charge. In any event, this record does not permit a finding that counsel was ineffective.

{¶ 34} Because Celaya has failed to demonstrate that counsel's performance was deficient or that any deficient performance resulted in prejudice, his assignment of error is overruled.

### III. Conclusion

{¶ 35} Having overruled Celaya's assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J., and HUFFMAN, J., concur.