[Cite as *State v. Williams*, 2021-Ohio-3579.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| TAMARKIS WILLIAMS, | : | Case No. 2021CA0003 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:                     Appeal from the Coshocton County
                                            Court of Common Pleas, Case No.
                                            20CR0087


JUDGMENT:                                   Affirmed in part; remanded in part


DATE OF JUDGMENT:                           October 5, 2021


APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

WILLIAM C. HAYES                            JAMES ANZELMO
Licking County Prosecutor                   446 Howland Drive
Special Prosecutor for Coshocton            Gahanna, Ohio 43230
County Prosecutor's Office

By: PAULA SAWYERS
Assistant Prosecuting Attorney
20 S. Second Street, Fourth Floor
Newark, Ohio 43055

*Baldwin, J.*

**{¶1}** Tamarkis Williams appeals the sentence imposed by the Coshocton County Court of Common Pleas after receiving his plea of guilty to kidnapping, a First degree felony, in violation of R.C. 2905.01; and aggravated robbery, a First degree felony, in violation of R.C. 2911.01 with a firearm specification. Appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

**{¶2}** On July 1, 2020, Appellant, Tamarkis Williams and four others planned and executed a robbery of a juvenile, C.H.

**{¶3}** C.H. called Hunter Markley to buy marijuana and Markley said he didn't have any to sell, but could help him find a seller. Williams took the phone and arranged to meet with C.H. suggesting that he had marijuana to sell. Prior to meeting with C.H., Williams and the others discussed the plan to rob C.H.

**{¶4}** Williams and Elijah Byrd were driven to an agreed location and the driver, Kacia R.A. Eckelberry, drove to meet C.H. with Markley and Kire E. Page hiding in the back of the vehicle. Eckelberry picked up C.H. and drove back to where Byrd and Williams were waiting. Byrd and Williams got in the back seat with C.H., held him at gun point and demanded his belongings. They took C.H. to a different location, forced him out of the vehicle at gun point and told him to get on his knees. They took $60.00 in cash, his shoes, sweatshirt, pocket knife and a chain necklace. Williams and his cohorts drove off and divided C.H.'s property.

**{¶5}** Williams was charged with kidnapping, a First degree felony, in violation of R.C. 2905.01(A)(2) and one count of aggravated robbery, a First degree felony, in violation of R.C. 2911.01(A)(1),(C) with a firearm specification. He entered a plea of guilty

on December 14, 2020 and appeared for sentencing on January 19, 2021.  The court reviewed the facts and determined that the offenses did not merge. The trial court imposed a sentence of a minimum term of eight years and a maximum term of twelve years for the offense of aggravated robbery with an additional three years for the gun specification.  For the offense of kidnapping, the trial court sentenced Williams to a minimum of four years and a maximum of six years.

**{¶6}**    The trial court decided that the sentences should be served consecutively finding that "the consecutive sentences are necessary to protect the public from future crime punish the defendant and are not disproportionate to the seriousness of the defendant's conduct and the danger that the defendant poses to the public. The court finds that the defendant committed the instant offense while under a community control sanction from Clark County for trespass in a habitation. (O. R. C.2929.14(C)(4)(a))." (Judgment Entry on Sentencing, Jan. 26, 2021). Williams was advised of a rebuttable presumption that he would be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the defendant's presumptive early earned early release date, whichever is earlier, pursuant to the Reagan Tokes Act. He was also advised of his obligation to register as a violent offender under R.C.2903.42 and the weapon he carried during the offense was forfeited to the state.

**{¶7}**    Williams did not raise the issue of the constitutionality of the Reagan Tokes Act in the court below.

**{¶8}**    Williams filed a notice of appeal and submitted five assignments of error:

**{¶9}**    "I. AS AMENDED BY THE REAGAN TOKES ACT, THE REVISED CODE'S SENTENCES FOR FIRST AND SECOND DEGREE QUALIFYING FELONIES

VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO."

**{¶10}** "II. THE TRIAL COURT ERRED BY FAILING TO MERGE WILLIAMS'S KIDNAPPING AND AGGRAVATED ROBBERY OFFENSES, IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

**{¶11}** "III. THE TRIAL COURT UNLAWFULLY ORDERED WILLIAMS TO SERVE CONSECUTIVE SENTENCES FOR HIS OFFENSES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

**{¶12}** "IV. THE TRIAL COURT ERRED BY ORDERING WILLIAMS TO BE PLACED ON THE VIOLENT OFFENDER REGISTRY."

**{¶13}** "V. TAMARKIS WILLIAMS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

**ANALYSIS**

**I.**

**{¶14}** Williams's first assignment of error challenges the constitutionality of the Regan Tokes Act which codified hybrid indefinite prison terms for first and second degree felonies. Williams challenges the presumptive release feature of the act, R.C. 2967.271, advancing several arguments including it violates his constitutional rights to trial by jury

and due process of law, and further violates the constitutional requirement of separation of powers and equal protection.

**{¶15}** R.C. 2967.271 provides in relevant part:

(B) When an offender is sentenced to a non-life felony indefinite prison term, there shall be a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.

(C) The presumption established under division (B) of this section is a rebuttable presumption that the department of rehabilitation and correction may rebut as provided in this division. Unless the department rebuts the presumption, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier. The department may rebut the presumption only if the department determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or

committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(a) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

(D)(1) If the department of rehabilitation and correction, pursuant to division (C) of this section, rebuts the presumption established under division (B) of this section, the department may maintain the offender's incarceration in a state correctional institution under the sentence after the expiration of the offender's minimum prison term or, for offenders who have a presumptive earned early release date, after the offender's presumptive earned early release date. The department may maintain the offender's incarceration under this division for an additional period of incarceration determined by the department. The additional period of incarceration shall be a reasonable period determined by the department, shall be specified by the department, and shall not exceed the offender's maximum prison term.

(2) If the department maintains an offender's incarceration for an additional period under division (D)(1) of this section, there shall be a presumption that the offender shall be released on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department as provided under that division or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date that is specified by the department as provided under that division. The presumption is a rebuttable presumption that the department may rebut, but only if it conducts a hearing and makes the determinations specified in division (C) of this section, and if the department rebuts the presumption, it may maintain the offender's incarceration in a state correctional institution for an additional period determined as specified in division (D)(1) of this section. Unless the department rebuts the presumption at the hearing, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date as specified by the department.

The provisions of this division regarding the establishment of a rebuttable presumption, the department's rebuttal of the presumption, and the

department's maintenance of an offender's incarceration for an additional period of incarceration apply, and may be utilized more than one time, during the remainder of the offender's incarceration. If the offender has not been released under division (C) of this section or this division prior to the expiration of the offender's maximum prison term imposed as part of the offender's non-life felony indefinite prison term, the offender shall be released upon the expiration of that maximum term.

**{¶16}** Appellant argues these portions of R.C 2967.271 permitting the Department of Rehabilitation and Corrections (DRC) to administratively extend his prison term beyond his presumptive minimum prison term violate the United States and Ohio Constitutions. However, as the state points out, appellant has not yet been subject to the application of these provisions, as he has not yet served his minimum term, and therefore has not been denied release at the expiration of his minimum term of incarceration.

**{¶17}** We addressed the concept of ripeness for review in regard to the Regan Tokes Act in *State v. Downard*, 5th Dist. Muskingum, CT2019, 2020-Ohio-4227:

The Ohio Supreme Court discussed the concept of ripeness for review in *State ex rel. Elyria Foundry Co. v. Indus. Comm.,* 82 Ohio St.3d 88, 1998-Ohio-366, 694 N.E.2d 459:

Ripeness "is peculiarly a question of timing." Regional Rail Reorganization Act Cases (1974), 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320, 351. The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *."

*Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691. As one writer has observed:

The basic principle of ripeness may be derived from the conclusion that 'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells legal injury to the plaintiff. Comment, Mootness and Ripeness: The Postman Always Rings Twice (1965), 65 Colum. L.Rev. 867, 876. Id. at 89, 694 N.E.2d at 460.

In *State v. McCann*, 8th Dist. Cuyahoga No. 85657, 2006-Ohio-171, the defendant argued because the Parole Board, pursuant to R.C. 2967.28, could extend his sentence by up to an additional five years for violation of post-release control, the statute was unconstitutional. The Eighth District Court of Appeals concluded because McCann was not currently the subject of such action by the Parole Board, the issue was not yet ripe for review. Id. at ¶6.

Likewise, in the instant case, while R.C. 2967.271 allows the DRC to rebut the presumption Appellant will be released after serving his nine year minimum sentence and potentially continue his incarceration to a term not exceeding thirteen years, Appellant has not yet been subject to such action by the DRC, and thus the constitutional issue is not yet ripe for our review.

**{¶18}** *Downard*, at ¶8-11. See also, *State v. Buckner*, 5th Dist. Muskingum Nos. CT2020-0023 & CT2020-0024, 2020-Ohio-7017; *State v. Wolfe,* 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501; *State v. Cochran,* 5th Dist. Licking No. 2019 CA 00122, 2020-Ohio-5329; *State v. Clark,* 5th Dist. Licking No. 2020 CA 00017, 2020-Ohio-5013; *State v. Manion*, 5th Dist. Tuscarawas No. 2020 AP 03 0009, 2020-Ohio-4230; *State v. Kibler*, 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631.

**{¶19}** Appellant does not dispute he had not yet been subject to the provisions of R.C. 2967.271. We therefore find here as we did in *Downard,* Appellant's constitutional challenges are not yet ripe for review.

**II.**

**{¶20}** In his second assignment of error, Williams contended that the trial court erred by failing to merge kidnapping and aggravated robbery offenses. Appellate review of an allied-offense question is de novo. *State v. Miku,* 5th Dist. No. 2017 CA 00057, 2018-Ohio-1584, ¶ 70, appeal not allowed, 154 Ohio St.3d 1479, 2019-Ohio-173, 114 N.E.3d 1207 (2019), quoting *State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 12.

**{¶21}** Revised Code 2941.25 protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions by prohibiting convictions of allied offenses of similar import:

> Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶22}** The application of R.C. 2941.25 requires a review of the subjective facts of the case in addition to the elements of the offenses charged. *State v. Hughes,* 5th Dist. Coshocton No. 15CA0008, 2016-Ohio-880, ¶ 21. In a plurality opinion, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The Court directed us to look at the elements of the offenses in question and determine "whether it is possible to commit one offense *and* the other with the same conduct." (Emphasis sic). *Id.* at ¶ 48. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. *Id.* at ¶ 49. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge. *Id.* at ¶ 51.

**{¶23}** *Johnson's* rationale has been described by the Court as "incomplete." *State v. Earley,* 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 11. The Supreme Court of Ohio has further instructed us to ask three questions when a defendant's conduct supports multiple offenses: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or

motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

**{¶24}** Williams planned and committed kidnapping and aggravated robbery and argues that the offenses should merge as they were all part of a continuous course of conduct. While continuity may be an issue to consider, it is not conclusive. In the case before us, Williams and his co-defendants held C.H. at gun point and transported him to a different location. Kidnapping is complete once the accused "by force, threat, or deception, * * * remove[s] another from the place where the other person is found or restrain the liberty of the other person, * * * to facilitate the commission of any felony or flight thereafter." R.C.2905.01(A)(2). The commission of aggravated robbery necessarily entails the restraint of the victim. "But where 'the restraint is prolonged, the confinement is secretive, or the movement is so substantial as to demonstrate a significance independent of the robbery, there exists a separate animus, a separate 'immediate motive,' to support the kidnapping conviction.'" (Citations omitted.) *State v. Houston,* 1st Dist. Hamilton No. C-130429, 2014-Ohio-3111, ¶ 22.

**{¶25}** The transportation of C.H. at gun point in a vehicle is sufficiently substantial to demonstrate a significance independent of the robbery and reflects an animus separate from the aggravated robbery. The asportation of C.H. to a second location was not necessary to complete aggravated robbery. Rather, the substantial movement, taking of C.H.'s shoes and phone appear instead to have facilitated the escape of Williams and his co-defendants. See *State v. Randle*, 3d Dist. Marion Nos. 9-17-08 & 9-17-09, 2018-Ohio-207, ¶ 16-17; *State v. Smith*, 11th Dist. No. 2018-T-0061, 2019-Ohio-1952, ¶ 27.

**{¶26}** Kidnapping and aggravated robbery in the context of this case are not allied offenses. The trial court did not therefore err in failing to merge the charges.

### III.

**{¶27}** In his third assignment of error, Williams argues the trial court unlawfully ordered him to serve consecutive sentences.

**{¶28}** R.C. 2929.14(C)(4) addresses consecutive sentences. That section states:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶29}** When imposing consecutive sentences, a trial court must state the required findings at the sentencing hearing. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. Because a court speaks through its journal, the court should also incorporate its statutory findings into the sentencing entry. *Id.* However, a word-for-word recitation of the language of the statute is not required. *Id.* As long as the reviewing court can discern the trial court engaged in the correct analysis and can determine the record contains evidence to support the findings, consecutive sentences should be upheld. *Id.*

**{¶30}** Williams conceded that the trial court here made the appropriate findings to support consecutive sentences. He argues instead that he was undeserving of consecutive sentences because he is remorseful, and the instant matter involved only one victim. He contends that he did not brandish a firearm during the offense, but that his co-defendant held the weapon. He claims that his military service and the fact that he has a child also mitigate against consecutive sentences and complains that the trial court imposed concurrent sentences on a co-defendant.

**{¶31}** The trial court considered the factors described by Williams as well as the pre-sentence investigation report, and the statements made during sentencing. The trial court noted that Williams was on community control for a burglary offense at the time he committed the offenses in this case. The trial court's sentencing on the charges complies with all applicable rules and sentencing statutes. Based upon these facts as well as the balance of the record, we cannot say that we clearly and convincingly find that the trial

court's order for consecutive service was not supported by the R.C. 2929.14(C) factors or that it was contrary to law.

**{¶32}** The third assignment of error is overruled.

**IV.**

**{¶33}** In his fourth assignment of error Williams argues the trial court failed to properly inform him, before sentencing, of the procedure and criteria for rebutting the presumption he would be placed in the Violent Offender Registry Database (VOD) and therefore his placement in the same was error. We agree the trial court failed to fulfill its obligation under R.C. 2903.42.

### *Sierah's Law*

**{¶34}** Revised Code 2903.41 et seq., known as Sierah's Law, became effective on March 20, 2019. *See* 2018 S.B. No. 231. The law created the VOD and established a presumption that offenders convicted of specified offenses, including kidnapping, must enroll in the database. Once enrolled, an offender is required to re-enroll in the database on an annual basis for a minimum of 10 years.

**{¶35}** Enrollment in the VOD further requires an offender to complete and sign an enrollment form providing personal data well as finger and palm prints and annual photographs. R.C. 2903.42(C)(2)(a)-(i); R.C. 2903.43(C)(3), (D)(1). An offender who recklessly fails to enroll, re-enroll, or notify the sheriff of a change of address is guilty of a felony of the fifth degree. R.C. 2903.43(I)(1) and (2).

***The Trial Court's Obligations***

**{¶36}** R.C. 2903.42(A)(1) governs enrollment in the VOD and places certain notification obligations on the trial court before sentencing. Relevant to the instant matter that section states:

> (A)(1) For each person who is classified a violent offender, it is presumed that the violent offender shall be required to enroll in the violent offender database with respect to the offense that so classifies the person and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database. The presumption is a rebuttable presumption that the violent offender may rebut as provided in division (A)(4) of this section, after filing a motion in accordance with division (A)(2)(a) or (b) of this section, whichever is applicable. *Each violent offender shall be informed of the presumption established under this division, of the offender's right to file a motion to rebut the presumption, of the procedure and criteria for rebutting the presumption, and of the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome*, as follows:

> (a) If the person is classified a violent offender under division (A)(1) of section 2903.41 of the Revised Code, the court that is sentencing the offender for the offense that so classifies the person *shall inform the offender before sentencing of the presumption, the right, and the procedure, criteria, and possible outcome.* (Emphasis added.)

R.C. 2903.42(A)(1)(a).

***The Offender's Obligations***

**{¶37}** Should an offender wish to rebut the presumption of enrollment into the VOD the process for doing so is set forth in R.C. 2903.42(A)(2)(a):

(2) A violent offender who wishes to rebut the presumption established under division (A)(1) of this section shall file a motion in accordance with whichever of the following is applicable, and shall serve a copy of the motion on the prosecutor:

(a) If the person is classified a violent offender under division (A)(1) of section 2903.41 of the Revised Code, the offender shall file the motion with the court that is sentencing the offender for the offense that classifies the person a violent offender. The motion shall assert that the offender was not the principal offender in the commission of that offense and request that the court not require the offender to enroll in the violent offender database and not have all VOD duties with respect to that offense. The motion shall be filed prior to or at the time of sentencing.

**{¶38}** Thus, while R.C. 2903.43(A)(2)(a) does provide a mechanism to rebut the presumption of enrollment into the VOD, the only way a defendant can successfully overcome that presumption is if he or she is not the principal offender of the subject offense.

***Sierah's Law as Applied to this Matter***

**{¶39}** The record in this case contains only a description of William's obligation to register as a violent offender at the time of sentencing:

We also need to do a violent offender registration form. Mr. Williams, you have been convicted of or pleaded guilty to a qualifying violent offender offense. That would be kidnapping as set forth in Count 2. You have been sentenced to a prison term; therefore, you must enroll in a violent offender database personally with the sheriff of the county in which you reside 10 days after your release from prison. If you are an out-of-state offender, you must enroll in a database personally with the sheriff in the county in which you reside or occupy a dwelling, 10 days either residing or occupying a dwelling in Ohio for more than three consecutive days or by residing in or occupying a dwelling in Ohio for an aggregate period calendar year of 14 or more days. You are required to provide the sheriff where you reside or are required to register the following information: Your full name and any alias you use. Your residence address. Your Social Security number. Your driver's license, or commercial driver's license number, or state identification card number issued to you. Information regarding the offense of which you are convicted or pleaded guilty. The name and address of any place where you are employed. Name and address of any school or institution of higher education. License plate number of each vehicle owned or operated by you or registered in your name. Vehicle identification number and description of each vehicle. A description of any scars, tattoos, or other distinguishing marks on your person. You are required to provide the sheriff fingerprints and palm prints. The sheriff will also obtain a photograph of you have at the time of your enrollment. After the date of initial enrollment, you

are required to re-enroll annually. And you must update or amend any of the information described that has changed and provide any additional information requested from the county sheriff's office within 10 days of the anniversary of the calendar date on which you are initially enrolled. If you change your residence address during the 10-year enrollment period, you shall provide written notice of that change to the sheriff with whom you most recently enrolled and with the sheriff of the county in which you intend to reside within three business days of change of residence address. You are required to comply with all of those requirements for a period of 10 years. And what county is your expected residence address upon your release?

THE DEFENDANT: Tuscarawas.

THE COURT: The address of the sheriff's office is unknown to me at that location. However, it is in New Philadelphia, Ohio. Failure to enroll or failure to verify residence at the specified time will result in criminal prosecution. And then I'm going to have someone bring over the forms simply acknowledging that these requirements were read to you. Let me ask counsel, I believe that covers anything. Anything further Mr. -- or, excuse me, Mr. Murphy, from the State of Ohio?

(Transcript, Sentencing Hearing, Jan. 15, 2021, pages 12-14).

**{¶40}** The trial court failed to advise Williams of the procedure and criteria for rebutting the presumption he would be enrolled in the VOD. In support of his argument, Williams directs us to *State v. Fabian*, 12th Dist. Warren No. CA2019-10-119, 2020-Ohio-3926. In that matter, Fabian argued his pleas were not knowingly, intelligently, or

voluntarily made because the trial court failed to comply with Crim.R. 11(C)(2)(a) when it failed to advise him of post-release control during his plea colloquy. The majority of the court agreed finding "the trial court's total failure to inform Fabian of postrelease control, which was a part of the maximum penalty, before it accepted the guilty plea, constituted "a trial court's complete failure to comply with a portion of Crim.R. 11(C)" pursuant to the second exception to the prejudice requirement." " *Fabian* ¶ 24. quoting *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224 ¶ 22.

**{¶41}** But Williams does not argue that his plea was rendered involuntary due to the trial court's failure to advise him of the procedure and criteria for rebutting the presumption he would be placed on the VOD, nor does he request his sentence be vacated. Rather, Williams simply argues the trial court erred in placing him on the VOD.

**{¶42}** Williams's placement on the VOD is not itself erroneous as it is mandatory based on Williams's conviction for kidnapping and as the sole offender in the matter. However, the trial court did not fulfill all of its notification requirements.

**{¶43}** The Ohio General Assembly chose the term "shall" when describing the trial court's obligation to inform a violent offender of the procedure and criteria for rebutting the presumption that the offender will be enrolled in the VOD. R.C. 2903.42(A)(1)(a). It is well established that "shall" means must when used in a statute. *State v. Noling*, 153 Ohio St.3d 108, 2018-Ohio-795, 101 N.E.3d 435, ¶ 64. The use of the word shall "connotes a mandatory obligation unless other language evidences a clear and unequivocal intent to the contrary." *Id.*, quoting *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.2d 1242, ¶ 13.

**{¶44}** Because the sentencing court was required to inform Williams of the procedure and criteria for rebutting the presumption he would be placed on the VOD and possible outcome, we vacate only William's placement on the VOD and remand the matter to permit the proper advisements to be made.

**{¶45}** The fourth assignment of error is sustained.

**V.**

**{¶46}** In his fifth assignment of error, Williams contends he received ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**{¶47}** Williams makes three arguments under this assignment of error. First, he argues trial counsel was ineffective because he failed to argue against the Regan Tokes Act. We have found that the argument was waived, however, even had he made the argument, we have noted that the issue is not ripe for review. We therefore reject William's argument. Likewise, Williams contention that his trial counsel was ineffective for failing to argue that the offenses did not merge must fail as we have found that the charges of kidnapping and aggravated robbery, in the context of this case, do not merge.

**{¶48}**  Next Williams argues his counsel was ineffective for failing to object to his placement on the VOD. This argument has been rendered moot by our resolution to the third assignment of error. Williams's fifth assignment or error is denied.

**{¶49}**  The judgment of the Coshocton County Court of Common Pleas is affirmed in part. Appellant's placement on the Violent Offender Registry Database is vacated and remanded for proceedings consistent with this opinion.

By: Baldwin, P.J.

Wise, Earle, J. concurs

Gwin, J. dissents.

*Gwin, P.J., Dissenting*

{¶50} I concur in the majority's disposition of Appellant's Second, Third, Fourth and Fifth Assignments of Error. I respectfully dissent from the majority's opinion concerning ripeness and Appellant's First Assignment of Error for the reasons set forth in my dissenting opinion in *State v. Wolfe,* 5th Dist., Licking No. 2020 CA 00021, 2020-Ohio- 5501.

{¶51} I further note that the Ohio Supreme Court has accepted a certified conflict on the issue of whether the constitutionally of the Reagan Tokes Act is ripe for review on direct appeal or only after the defendant has served the minimum term and been subject to extension by application of the Act. *See, State v. Maddox*, 6th Dist. Lucas No. L-19- 1253, 2020-Ohio-4702, *order to certify conflict allowed, State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150(Table) The conflict cases are *State v. Leet*, 2d Dist. Montgomery No. 28670, 2020-Ohio-4592; *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Barne*s, 2d Dist. Montgomery No. 28613, 2020- Ohio-4150; and *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *See also, State v. Downard,* 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227, *appeal accepted on Appellant's Proposition of Law No. II*, *State v. Downard*, 160 Ohio St.3d 1507, 2020-Ohio-6835, 159 N.E.3d 1507 (Table)(Sua sponte, cause held for the decision in 2020-1266, *State v. Maddox*). The Ohio Supreme Court heard oral arguments on these cases on June 29, 2021.