**[Cite as *State v. Wright*, 2021-Ohio-4107.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28368 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-1554 |
| | : | |
| DEMARCO WRIGHT | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of November, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JAMIE J. RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

SCOTT S. DAVIES, Atty. Reg. No. 0077080, 7416 Waterway Drive, Waynesville, Ohio 45068
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Demarco Wright pled guilty in the Montgomery County Court of Common Pleas to aggravated burglary (physical harm), aggravated robbery (deadly weapon), kidnapping (terrorize), felonious assault (serious physical harm), grand theft (motor vehicle), theft (R.C. 2913.71 property), and gross sexual imposition (by force). The trial court sentenced him to 15 years in prison, designated him both a Tier I sex offender and a violent offender, and ordered him to pay restitution and court costs.

{¶ 2} Wright appeals from his convictions, challenging the trial court's application of the Violent Offender Database duties in Sierah's Law to his case. For the following reasons, the portion of the trial court's judgment imposing Wright's Violent Offender Database duties in accordance with Sierah's Law will be reversed, and the matter will be remanded for the trial court to provide him the notifications under R.C. 2903.42(A)(1)(a), to provide him an opportunity to file a motion to rebut the statutory presumption, and for a new ruling on whether he is required to enroll in accordance with R.C. 2903.42. In all other respects, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 3} In May 2018, Wright was charged in a 14-count indictment with two counts of aggravated burglary, two counts of aggravated robbery, three counts of kidnapping, two counts of rape, two counts of felonious assault, and one count each of robbery, grand theft, and theft. Wright subsequent reached a plea agreement with the State in which he agreed to plead guilty to seven charges: aggravated burglary (Count 1), aggravated robbery (Count 3), kidnapping (Count 7), felonious assault (Count 11), grand theft (motor vehicle (Count 13), theft (R.C. 2913.71 property) (Count 14), and gross sexual imposition

(by force) (added by bill of information). The prosecutor represented to the court that, in exchange for Wright's pleas, "the balance of the indictment would be nollied, and the defendant would receive an agreed sentence between 9 and 15 years."

{¶ 4} During the March 27, 2019 plea hearing, the prosecutor informed the trial court in a sidebar discussion that "[t]here's been a change in the law," namely the creation of a violent offender registry, effective March 20, 2019. The prosecutor indicated that the requirement to enroll as a violent offender would apply to the kidnapping count. The parties discussed with the court whether the new enrollment requirement applied to Wright and what advisements needed to be made at the plea hearing, with the court commenting that it had not been informed that it "had to do this." Neither the court, the prosecutor, nor defense counsel knew the details of Sierah's Law's requirements.

{¶ 5} Following the discussion and with defense counsel's agreement, the court informed Wright:

THE COURT: Mr. Wright, I need to tell you due to a very recent change, which may have an effect on you and I'm not sure if it does, but I think I need to inform you of this, that you may be placed on what we call a violent offender registry for the charge of kidnapping. It would only apply to that offense. We would make that determination, and I would so advise you at the sentencing of this matter, but I do need to tell you now that there's a very good likelihood that you would be placed on that registry, and I want to inform you of that so you can factor that into your decision here today to enter pleas. Okay, do you understand that?

THE DEFENDANT: Yes, sir.

(Plea Tr. at 15.) After additional advisements pursuant to Crim.R. 11, Wright pled guilty to the seven charges in accordance with the plea agreement.

{¶ 6} After a presentence investigation, the trial court sentenced Wright to 15 years in prison and designated him a Tier I sex offender and a violent offender. The trial court reviewed with Wright the forms that notified him of his duties as a Tier I sex offender and his duties to enroll, re-enroll and provide notice of a change of address under the violent offender statute. The court ordered Wright to pay restitution and court costs, including extradition costs.

{¶ 7} Wrights appeals from his convictions. His original appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Upon our *Anders* review, we found that non-frivolous issues existed as to whether the trial court provided adequate notice of the violent offender registration requirements under R.C. 2903.42 and whether the trial court failed to comply with R.C. 2903.42 at sentencing. We therefore rejected the *Anders* brief and appointed new counsel for Wright.

{¶ 8} Wright, with new counsel, now raises three assignments of error.

## II. Retroactive Application of Sierah's Law

{¶ 9} In his first assignment of error, Wright claims that "[t]he Trial Court's application of Ohio's Violent Offender Registry provisions of ORC 2903.41 is unconstitutional because the offenses occurred prior to March 20, 2019."

{¶ 10} In 2018, the 132nd General Assembly enacted S.B. 231, commonly known as Sierah's Law. Sierah's Law established the Violent Offender Database and requires violent offenders convicted of specified offenses, including kidnapping, to enroll in the

database. Sierah's Law creates a presumption that violent offenders enroll in the database and mandates enrollment for a minimum of ten years. Re-enrollment in the database is required on an annual basis. *See* R.C. 2903.41 through R.C. 2903.43; *State v. Hall*, 2021-Ohio-1894, 173 N.E.3d 166, ¶ 26 (2d Dist.); *State v. Garst,* 2d Dist. Clark No. 2020-CA-51, 2021-Ohio-1516, ¶ 4.

**{¶ 11}** Wright first argues that the Violent Offender Database duties do not apply to him, because his offenses occurred prior to March 20, 2019, the effective date of Sierah's Law. Of relevance here, R.C. 2903.41(A) defines a "violent offender" to include, among others, any person who is "convicted of or pleads guilty to" kidnapping in violation of R.C. 2905.01 on or after the effective date of Sierah's Law. *See* R.C. 2903.41(A)(1)(a). Wright pled guilty to kidnapping on March 27, 2019 and was convicted of the offense on April 22, 2019, when the judgment entry was filed. Accordingly, Wright was subject to Sierah's Law under R.C. 2903.41(A)(1)(a).

**{¶ 12}** Wright asserts that application of Sierah's Law to him violates the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution. "The Retroactivity Clause of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments." *Garst* at ¶ 17, citing *Bielat v. Bielat*, 87 Ohio St.3d 350, 352, 721 N.E.2d 28 (2000). "The retroactivity clause nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].' " *Bielet* at 352-353, quoting *Miller v. Hixson*, 64 Ohio St. 39, 51, 59 N.E. 749 (1901). However, not all retroactive laws are forbidden. *Id.* at 353; *In re Forfeiture of Property of Astin*, 2018-Ohio-1723, 111 N.E.3d 894, ¶ 14 (2d Dist.).

{¶ 13} The Supreme Court of Ohio has articulated a two-part test for determining whether a statute is unconstitutionally retroactive. The first step asks whether the Ohio legislature had expressly made the statute retroactive. *See State v. Jarvis*, Ohio Slip Opinion No. 2021-Ohio-3712, __ N.E.3d __, ¶ 9; *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 105, 522 N.E.2d 489 (1988); *State v. Irvin*, 2020-Ohio-4847, 160 N.E.3d 388, ¶ 25 (2d Dist.); R.C. 1.48 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."). If the legislature expressly intended the statute to apply retroactively, the second step is to determine whether the statute is substantive, as opposed to merely remedial. *Bielat* at 353. A statute is substantive if it impairs vested, substantial rights or imposes new burdens, duties, obligations, or liabilities in regard to a past transaction, "such as a retroactive increase in punishment for a criminal offense." *Jarvis* at ¶ 9. A statute that both applies retroactively and is substantive violates the Retroactivity Clause. *Bielat* at 353.

{¶ 14} We have previously concluded that the Ohio legislature expressly intended for Sierah's Law to apply retroactively. *State v. Williams*, 2d Dist. Montgomery No. 28648, 2021-Ohio-1340, ¶ 141; *Garst* at ¶ 19. Moreover, upon review of the requirements imposed by Sierah's Law, we have concluded that those requirements are remedial in nature and are not unconstitutionally retroactive. *Williams* at ¶ 144; *see also Garst* at ¶ 23.

{¶ 15} The Supreme Court of Ohio recently reached the same conclusions. Addressing a conflict between the Fifth and Twelfth District Courts of Appeals, the supreme court considered whether the retroactive application of Sierah's Law to offenders who committed their offenses prior to March 20, 2019, the effective date, violated the

Retroactivity Clause of Article II, Section 28 of the Ohio Constitution. The Court, in a plurality opinion,[1] held that it did not, with the following summarization:

> We have recognized that registration schemes such as Sierah's Law apply retroactively when the duty to register attaches to conduct committed prior to the effective date of the statute. *See, e.g., Williams* at ¶ 8, 21. A review of our caselaw considering registration schemes imposing duties on par with the duties established by Sierah's Law shows that Sierah's Law does not impair a vested, substantial right or impose new burdens, duties, obligations, or liabilities as to a past transaction. In fact, a comparison of the requirements of Sierah's Law to other registration schemes that we have upheld against retroactivity challenges demonstrates that it is less burdensome and less invasive than those other schemes. *See, e.g., State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570 (1998), *superseded by statute on other grounds as stated in Williams* at ¶ 11; *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, *superseded by statute on other grounds as stated in Williams* at ¶ 16. And unlike the registration scheme that this court held to be punitive and therefore unconstitutionally retroactive in *Williams*, Sierah's Law does not retroactively increase the punishment for an offense committed prior to its enactment.

> For these reasons, we determine that the application of Sierah's Law to conduct that occurred prior to its effective date does not violate the

---

[1] Two justices concurred in the court's opinion, one concurred in judgment only, and three dissented.

Retroactivity Clause of Article II, Section 28 of the Ohio Constitution. * * * *State v. Hubbard*, Ohio Slip Opinion No. 2021-Ohio-3710, __ N.E.3d __, ¶ 4-5. *See also Jarvis*. Accordingly, Wright's claim that the trial court's application of Sierah's Law to him was unconstitutional because his offense occurred prior to March 20, 2019 lacks merit.

{¶ 16} Wright's first assignment of error is overruled.

## II. Validity of Wright's Plea

{¶ 17} In his second assignment of error, Wright claims that, "[e]ven if the Ohio Violent Offender Registry requirements were applicable in the instant matter, [he] did not have sufficient notice of the requirements of ORC 2903.41 to enter his plea." He asserts that the trial court's advisement regarding Sierah's Law was inadequate and, as a result, his plea was not entered knowingly, intelligently, and voluntarily.

{¶ 18} "An appellate court must determine whether the record affirmatively demonstrates that a defendant's plea was knowing, intelligent, and voluntary[.]" *State v. Russell*, 2d Dist. Montgomery No. 25132, 2012-Ohio-6051, ¶ 7, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). If a defendant's plea is not knowing, intelligent, and voluntary, it "has been obtained in violation of due process and is void." *Id*.

{¶ 19} "In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C)." *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13. The Supreme Court of Ohio has urged trial courts to comply literally with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, in reviewing the plea colloquy, the focus should be on whether "the dialogue between the court and the defendant demonstrates that the

defendant understood the consequences of his plea." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 12.

{¶ 20} Crim.R. 11(C)(2) requires a trial court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 21} In general, a defendant is not entitled to have his or her plea vacated unless the defendant demonstrates he or she was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C). *Dangler* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). The test for prejudice is "whether the plea would have otherwise been made." *Id.*; *State v. Boucher*, 2d Dist. Clark No. 2021-CA-16, 2021-Ohio-3751, ¶ 17.

{¶ 22} This general rule is subject to two exceptions. *Boucher* at ¶ 18. First, the trial court must comply strictly with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Id.* at ¶ 14; *Clark* at ¶ 31. "When a trial court fails to explain

the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Dangler* at ¶ 14.

**{¶ 23}** Second, "a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." *Id.* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. *See also State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 11 (a defendant must show prejudice if the trial court partially complied with Crim.R. 11(C) in regard to a nonconstitutional right, but no showing of prejudice is required if the trial court completely failed to comply).

**{¶ 24}** Wright claims that the trial court failed to adequately notify him regarding Sierah's Law. R.C. 2903.42(A)(1), which governs enrollment in the Violent Offender Database, provides in relevant part:

(A)(1) For each person who is classified a violent offender, it is presumed that the violent offender shall be required to enroll in the violent offender database with respect to the offense that so classifies the person and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database. The presumption is a rebuttable presumption that the violent offender may rebut as provided in division (A)(4) of this section, after filing a motion in accordance with division (A)(2)(a) or (b) of this section, whichever is applicable. *Each violent offender shall be informed of the presumption established under this division, of the offender's right to file a motion to rebut the presumption, of*

*the procedure and criteria for rebutting the presumption, and of the effect of*

*a rebuttal and the post-rebuttal hearing procedures and possible outcome,*

*as follows:*

*(a) If the person is classified a violent offender under division (A)(1) of*

*section 2903.41 of the Revised Code,[2] the court that is sentencing the*

*offender for the offense that so classifies the person shall inform the*

*offender before sentencing of the presumption, the right, and the procedure,*

*criteria, and possible outcome.*

(Emphasis and footnote added.)

{¶ 25} In this case, the trial court told Wright that, due to a "very recent change" in the law, which "may have an effect on you and I'm not sure if it does," he "may be placed on what we call a violent offender registry for the charge of kidnapping." The court indicated that it would make a determination regarding the violent offender registry at sentencing, but "there's a very good likelihood that you would be placed on that registry."

{¶ 26} The Violent Offender Database duties are a non-constitutional aspect of Wright's guilty plea and a collateral consequence of his actions. In general, a trial court is not obligated to inform a defendant about collateral consequences before accepting a plea, and its failure to do so does not render the plea invalid. *See, e.g., State v. Stape*, 2d Dist. Montgomery No. 22586, 2009-Ohio-420, ¶ 19 (because the obligations under

---

[2] R.C. 2903.41(A)(1) applies to an offender, like Wright, who on or after the effective date of the section, is convicted of or pleads guilty to a listed offense. Another provision, R.C. 2903.41(A)(2), addresses a person who, on the effective date of the section, "has been convicted of or pleaded guilty to an offense listed in division (A)(1) of this section and is confined in a jail, workhouse, state correctional institution, or other institution, serving a prison term, term of imprisonment, or other term of confinement for the offense."

Megan's Law were collateral consequences and not punitive, the trial court was not required to inform the defendant of those obligations prior to accepting a guilty plea). With respect to Sierah's Law specifically, we have stated that the trial court was not required to inform a defendant of *all* of the duties under Sierah's Law at the plea hearing. *See Hall*, 2021-Ohio-1894, 173 N.E.3d 166, at ¶ 33. Nevertheless, we will assume, for sake of argument, that the trial court was required to comply with R.C. 2903.42(A)(1)(a) as part of its plea colloquy.

**{¶ 27}** Upon review of the plea hearing transcript, the trial court did not substantially comply with its obligations under R.C. 2903.42(A)(1)(a). The court did not mention (1) that Wright's obligation to enroll was based on a statutory presumption that he was a violent offender under Sierah's Law, (2) that he had the right to file a motion to rebut the presumption, (3) the procedure and criteria for rebutting the presumption, and (4) the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome.

**{¶ 28}** Nevertheless, we cannot conclude that the trial court completely failed to comply with its obligations under R.C. 2903.42(A)(1). The court did notify Wright that he would "very likely" be placed on a violent offender registry for the kidnapping offense, so that Wright could take that obligation into account when entering his plea. Consequently, the burden was on Wright to establish that he was prejudiced by the trial court's failure to substantially comply with the requirements of R.C. 2903.42(A)(1)(a).

**{¶ 29}** The only manner by which Wright could have rebutted the presumption of having to enroll as a violent offender was to a file a motion with the trial court arguing that he was not the principal offender. Wright has not argued that he was not the principal offender, and the record before us indicates that he was the sole perpetrator of the

kidnapping. In the presentence investigation report, the complainant stated that a man, later identified as Wright, held him against his will, locked him in a dog crate, strangled him, burned him, beat him with multiple objects, and raped him. The complainant stated that Wright later left, returned in the complainant's car with another individual, and quickly left again. In his statement to the presentence investigator, Wright admitted to robbery, but he denied that the kidnapping and other offenses had occurred; he did not claim that someone else was the principal offender.

{¶ 30} On this record, Wright has not established that he could have rebutted the statutory presumption even if he had he been informed of the procedures for doing so. Moreover, he was aware that he was likely to be placed on the violent offender database and nevertheless pled guilty. Wright has not demonstrated that he was prejudiced by the trial court's incomplete advisement.

{¶ 31} Wright's second assignment of error is overruled.

### III. Sentencing under Sierah's Law

{¶ 32} Wright's third assignment of error states that the trial court "failed to comply with the procedural requirements of ORC 2903.42 at sentencing." Wright again points to the trial court's failure to comply with the requirements in R.C. 2903.42(A)(1)(a). For its part, the State agrees that the trial court erred in failing to properly advise Wright as required by R.C. 2903.42(A)(1)(a) at sentencing and asserts that the proper remedy is a limited remand for the trial court to provide those advisements.

{¶ 33} At the outset, we disagree that the trial court should have provided notifications under R.C. 2903.42(A)(1)(a) at the sentencing hearing. *See State v. Walker*, 2021-Ohio-580, 168 N.E.3d 628, ¶ 33, ¶ 37 (the trial court was required to provide

the advisements set forth in R.C. 2903.42(A)(1)(a) before the sentencing hearing). *But see State v. Williams*, 5th Dist. Coshocton No. 2021CA0003, 2021-Ohio-3579, ¶ 40 (vacating defendant's placement on Violent Offender Database when the trial court failed to inform him at sentencing of the procedure and criteria for rebutting the presumption and possible outcome). As stated above, R.C. 2903.42(A)(1)(a) requires the trial court to inform the offender "*before sentencing*" of the presumption, the right to file a motion to rebut the presumption, the procedure and criteria for rebutting the presumption, and the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome. (Emphasis added.) By its express language, R.C. 2903.42(A)(1)(a) does not address the trial court's obligations *at sentencing*.

{¶ 34} When an offender, such as Wright, has not filed a motion to rebut the presumption, the trial court must provide to the offender, *at sentencing*, notice of his or her duties under Sierah's Law. R.C. 2903.42(A)(3). Specifically, the trial court must

> require the violent offender to read and sign a form stating that the violent offender has received and understands the notice. If the violent offender is unable to read, the judge * * * shall inform the violent offender of the violent offender's duties as set forth in the notice and shall certify on the form that the judge * * * informed the violent offender of the violent offender's duties and that the violent offender indicated an understanding of those duties.

R.C. 2903.42(C). This division further provides, in relevant part:

> The attorney general shall prescribe the notice and the form provided under this division. The notice shall inform the offender that, to satisfy the duty

to enroll, the violent offender must enroll personally with the sheriff of the county in which the offender resides or that sheriff's designee and include notice of the offender's duties to re-enroll annually and when the offender has a change of address.

The person providing the notice under this division shall provide a copy of the notice and signed form to the violent offender. The person providing the notice also shall determine the county in which the violent offender intends to reside and shall provide a copy of the signed form to the sheriff of that county * * * and to the bureau of criminal identification and investigation.

{¶ 35} In this case, Wright appeared for sentencing on April 17, 2019. After stating that "[w]e are here for sentencing" and reiterating the charges to which Wright had pled guilty, the court stated that it was going to begin with the sex offender designation and his duties to enroll as a violent offender. The transcript of the sentencing hearing reflects that the trial court read to Wright, verbatim, from a "Notice of Duties to Enroll as a Violent Offender (R.C. 2903.41, et seq.)" form, which conformed with the requirements of R.C. 2903.42(C). Wright signed three copies of the form. We conclude that the trial court complied with its notification obligations under Sierah's Law at sentencing.

{¶ 36} Nevertheless, the record reflects, and the parties agree, that the trial court never provided the notifications required by R.C. 2903.42(A)(1)(a) prior to sentencing Wright. As a result, Wright was never informed by the trial court of the statutory presumption that he was required to enroll in the Violent Offender Database and of his ability to file a written motion to rebut the presumption. Furthermore, Wright was not

made aware of the effect of the rebuttal or the post-rebuttal hearing procedures and possible outcomes. Consequently, we agree with the parties that the portion of the trial court's judgment addressing Wright's duty to enroll in the Violent Offender Database must be reversed, and the trial court must provide Wright the notifications under R.C. 2903.42(A)(1)(a) and an opportunity to file a motion to rebut the statutory presumption that he must enroll in the Violent Offender Database.

## IV. Conclusion

{¶ 37} Wright's Violent Offender Database duties in accordance with Sierah's Law will be reversed, and the matter will be remanded for the trial court to provide him the notifications under R.C. 2903.42(A)(1)(a), to provide him an opportunity to file a motion to rebut the statutory presumption, and for a new ruling on whether Wright is required to enroll in accordance with R.C. 2903.42. In all other respects, the trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, P. J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Jamie J. Rizzo
Scott S. Davies
Hon. Dennis J. Adkins